# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kassia Coleman,<br><br>               Plaintiff,<br><br>v.<br><br>Lakeview Loan Servicing, LLC<br>and Cenlar FSB,<br><br>               Defendants. | Case No. 19-cv-1168 (DWF/HB)<br><br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff Kassia Coleman's Motion for Leave to Amend Complaint and for Punitive Damages [Doc. No. 38]. For the reasons set forth below, the motion is granted in part and denied in part.

## I.    Background

### A.    Allegations in the Original Complaint

Plaintiff Kassia Coleman is suing Defendants Lakeview Loan Servicing, LLC (Lakeview) and Cenlar FSB (Cenlar) (collectively, Defendants) for violating the Fair Debt Collection Practices Act (FDCPA) and the Minnesota Residential Mortgage Originator and Servicer Licensing Act (MOSLA) in connection with the servicing of her mortgage loan. (Compl. ¶¶ 1, 35–55 [Doc. No. 1].) Cenlar serviced the loan and mortgage, and when the loan went into default in 2016, it was assigned to Lakeview for collection. (*Id.* ¶¶ 6–7, 12.)

Coleman executed a loan modification agreement with Lakeview on May 7, 2018, which reflected an unpaid principal balance of $133,829.36. (*Id.* ¶¶ 21, 24.) The unpaid principal balance shown on Coleman's October 2018 mortgage statement, however, was $162,495.66. (*Id.* ¶ 25.) Similarly, the loan modification agreement provided for a monthly payment of $658.36, but the October 2018 monthly statement reflected a monthly payment of $759.12. (*Id.* ¶¶ 27–28.) The October 2018 statement also claimed $12,762.38 in "unapplied funds" and an "amount claimed due" of $43,636.05, which was inconsistent with the terms of the loan modification agreement. (*Id.* ¶¶ 29-30, 32.) Coleman alleges she has suffered actual damages in the form of intense emotional distress and related medical bills, and that Defendants' conduct has caused sleeplessness, anxiety, nausea, headaches, and other physical manifestations of stress. (*Id.* ¶¶ 32–34.)

Count I of the original complaint asserts a violation of the FDCPA pursuant to 15 U.S.C. ¶¶ 1692e and 1692f,[1] based on the incorrect payment, balance, and arrearage amounts reflected on the October 2018 monthly statement. (Compl. ¶¶ 36–41, 43–44, 46–48.) Count II asserts a violation of the MOSLA, Minn. Stat. § 58.13, subd. 1(a),[2]

---

[1] Title 15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

[2] The MOSLA provides in relevant part that no "residential mortgage originator or servicer" shall "fail to perform in conformance with its written agreements with borrowers," "violate any provision of any other applicable state or federal law regulating residential mortgage loans," or "make or cause to be made, directly or indirectly, any false, deceptive, or misleading statement or representation in connection with a residential loan transaction . . . ." Minn. Stat. § 58.13, subd. 1(a)(5), (8), (9).

based on Defendants' alleged failure to perform their obligations pursuant to the loan modification agreement. (Compl. ¶¶ 52–53.) The original complaint does not seek punitive damages for the FDCPA claim, but it does note the availability of punitive damages for the MOSLA claim under Minn. Stat. 58.18, subd. 1. (Compl. ¶¶ 54–55.)

### B.   Motion to Amend Complaint

On March 2, 2020, Coleman filed a motion for leave to amend her complaint. [Doc. No. 38]. She seeks leave to add allegations that Cenlar sent inaccurate mortgage statements from June 2017 through October 2018 and that Cenlar failed to integrate the terms and conditions of the loan modification agreement into its software management system. (Proposed Am. Compl. ¶¶ 25–26 [Doc. No. 38-2].) This, in turn, allegedly caused Cenlar to send inaccurate information about Coleman to national credit reporting agencies. (*Id.* ¶ 28.) Coleman proposes to allege that although Defendants knew about the inaccurate information, they continued to send her false, deceptive, and misleading loan statements and did not correct the information in Cenlar's system until February 2020. (*Id.* ¶¶ 32, 41, 43.)

Coleman seeks leave to further allege that Defendants knew she was represented by counsel no later than June 21, 2019, but that Cenlar mailed several letters to her home address after that date. (*Id.* ¶¶ 50–51, 53–54, 56.) On October 18 and November 18, 2019, a Cenlar representative allegedly came to Coleman's home and placed a note directing her to contact Cenlar on her door. (*Id.* ¶ 58–59.) On November 23, 2018, a Cenlar representative returned to Coleman's home and made direct contact with her concerning the debt. (*Id.* ¶ 60.)

3

Based on these new allegations, Coleman proposes to add two new FDCPA claims.  The first new claim is brought under 15 U.S.C. § 1692c(a)(2) and alleges that Defendants contacted Coleman directly numerous times via the mail, attempted to contact her in-person on her property, and actually contacted her in-person on her property, despite knowing she was represented by counsel in active litigation against them. (Proposed Am. Compl. ¶¶ 82–85.)  The second new claim is asserted under 15 U.S.C. § 1692e(b)(8) and alleges that Defendants' delays in adding the loan modification agreement information to Cenlar's software management system caused them to send incorrect information to credit reporting agencies and that Defendants failed to correct the wrong information until February 2020.  (Proposed Am. Compl. ¶¶ 88–90.)

Coleman also seeks to supplement her existing MOSLA claim with allegations that Defendants sent her false and deceptive loan statements that do not reflect the terms of the loan modification and do not reflect the current status of her account.  (*Id.* ¶¶ 94–96.)  Finally, Coleman proposes adding a new count for punitive damages against both Defendants, pursuant to Minnesota Statute § 549.20, subd. 1(a) and (b), for her FDCPA and MOSLA claims.  (Proposed Am. Compl. ¶¶ 101–06.)  She alleges that Defendants knowingly and deliberately sent her false and deceptive loan statements; continued to report false information to credit reporting agencies and took no corrective action, even after they knew the information was false; and knowingly and deliberately attempted to contact her directly at her home.  (*Id.* ¶¶ 104-06.)

Defendants oppose the motion on two grounds.  First, they argue Coleman has not satisfied Minnesota Statutes §§ 549.191 and 549.20 in seeking to allege punitive

damages.  Second, they argue the requests for punitive damages are futile.

## II.     Discussion

### A.     Relevant Legal Standards

Coleman seeks leave to amend pursuant to Federal Rule of Civil Procedure
15(a)(2), which allows a party to amend a complaint with the Court's leave and directs
the Court to "freely give leave when justice so requires."  Defendants, however, urge the
Court to hold Coleman to a more stringent punitive damages standard set forth in
Minnesota Statute § 549.191, which requires "one or more affidavits" establishing "prima
facie evidence" to support a motion to amend and add a claim for punitive damages.

Before the Court resolves this question, the Court observes that Minnesota Statute
§ 549.191 would potentially apply only to a cause of action arising under Minnesota state
law—here, the MOSLA claim.  *See Ulrich v. City of Crosby*, 848 F. Supp. 861, 866.
There can be no dispute that § 549.191 does not govern the pleading of punitive damages
for a federal claim such as Coleman's FDCPA claims.  *See Gamma-10 Plastics, Inc. v.
Am. President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994) (recognizing that a request
to add a claim for punitive damages based is governed by Federal Rule of Civil
Procedure 15).  Thus, the decision whether to apply Federal Rule of Civil Procedure
15(a)(2) or Minnesota Statute § 549.191 will affect only the MOSLA claim.

This Court has already addressed this question in other cases and concluded that
"the proper standard to apply is Rule 15 of the Federal Rules of Civil Procedure and not
Minnesota Statutes § 549.191."  *E.g., Shank v. Carleton Coll.*, No. 16-cv-1154 (PJS/HB),
2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018), *aff'd*, 329 F.R.D. 610 (D. Minn.

2019).  The Court recognized in *Shank* that numerous "recent decisions in this District have departed from past practice and are applying Federal Rules of Civil Procedure 15 instead of Minnesota Statutes § 549.191 when considering motions to add punitive damage claims."  *Id.* (citing cases).  *But see Rilley v. MoneyMutual, LLC*, No. 16-cv-4001 (DWF/LIB), 2018 WL 6920764, at *5 (D. Minn. Dec. 13, 2018) (finding the court must apply Minn. Stat. § 549.191).  The Court adopts and incorporates by reference its reasoning in *Shank*, 2018 WL 4961472, at *4–5.

As explained in *Shank*, even though the Court reviews Coleman's proposed amended complaint through the permissive Rule 15 lens, the Court must still determine whether she states a plausible claim for punitive damages—for her MOSLA claim, that is—in light of substantive Minnesota law.  *Shank*, 2018 WL 4961472, at *4.  That substantive Minnesota law is § 549.20.  *Id.*

### 1.     Minnesota Statute § 549.20

Under Minnesota law, punitive damages may be awarded "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others."  Minn. Stat. § 549.20 subd. 1(a).

> A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> > (1) deliberately proceed to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> >
> > (2) deliberately proceed to act with indifference to the high probability of injury to the rights or safety of others.

6

Minn. Stat. § 549.20, subd. 1(b).

### 2. Federal Rule of Civil Procedure 15

Though the Court should "freely give leave" to amend a pleading when justice

requires, Fed. R. Civ. P. 15(a)(2) "there is no absolute right to amend," and a court may

deny leave to amend "based upon a finding of undue delay, bad faith, dilatory motive,

repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-

moving party, or futility." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007)

(citation omitted).  When a party challenges a proposed amendment on futility grounds,

the Court considers whether the amendment could withstand a Rule 12(b)(6) motion to

dismiss.  *See Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th

Cir. 2008).  On a motion to dismiss filed pursuant to Rule 12(b)(6), the Court "must take

the well-pleaded allegations of the complaint as true, and construe the complaint, and all

reasonable inferences arising therefrom, most favorably to the pleader." *Morton v.

Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell *Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.*

### B. Amendments Related to the MOSLA Claim

The Court considers whether Coleman has stated a plausible claim for punitive

damages for her MOSLA claim, in light of substantive Minnesota law.  The MOSLA

creates a private right of action for a borrower who is injured by a violation of its

provisions.  Minn. Stat. § 58.18, subd. 1.  The provisions on which Coleman relies

prohibit residential mortgage servicers from failing to perform as required by their

written agreements with borrowers, violating state or federal law regulating residential

mortgage loans, or causing "any false, deceptive, or misleading statement or

representation in connection with a residential loan transaction."  Minn. Stat. § 58.13,

subd. 1(a)(5), (8), (9).  An injured borrower is entitled to several categories of damages,

including punitive damages.  Minn. Stat. § 58.18, subd. 1.

      In considering whether Coleman has stated a plausible claim for punitive damages

for her MOSLA claim, the Court cannot consider matters outside the pleadings, but must

base its determination on a four-corners analysis of the proposed amended complaint.

*Shank*, 2018 WL 4961472, at *6 ("While the process established by Minnesota Statute

§ 549.191 specifically contemplates consideration of evidence proffered outside the

pleadings, the Federal Rules of Civil Procedure do not.")  Coleman alleges in the

proposed amended complaint that Defendants knowingly and deliberately sent her several

false and deceptive loan statements that did not reflect the terms of the loan modification

agreement and did not reflect the current status of her account.  She further alleges that

Defendants knowingly and deliberately gave false information to credit reporting

agencies and failed to correct that information even after learning it was false.  In

addition, Coleman contends Defendants knowingly and deliberately attempted to contact

her directly at her home—and did contact her at home on one occasion—even after they

knew she had filed this action and was represented by counsel. The Court finds these proposed allegations create a plausible inference that Defendants acted with deliberate disregard for Coleman's rights under the MOSLA.

### C.     Amendments Related to the FDCPA Claims

Coleman seeks to add two new claims under the FDCPA. The first new claim is asserted under 15 U.S.C. § 1692c(a)(2) and alleges Defendants contacted Coleman directly numerous times via the mail, attempted to contact her in-person on her property, and actually contacted her in-person on her property, despite knowing she was represented by counsel in active litigation against them. (Proposed Am. Compl. ¶¶ 82–85.) The second new FDCPA claim is asserted under 15 U.S.C. § 1692e(b)(8) and alleges that Defendants' delays in adding the loan modification agreement information to Cenlar's software management system caused them to send incorrect information to credit reporting agencies and that Defendants failed to correct the wrong information.

Defendants' challenge to these new claims was limited to the availability of punitive damages. Defendants have not argued or shown that the new FDCPA claims could not withstand a Rule 12 motion to dismiss or that leave to add the new FDCPA claims should be denied for some other reason. Consequently, the Court grants Coleman leave to amend to add the two new FDCPA claims.

With respect to Coleman's request to allege punitive damages for her new and existing FDCPA claims, however, Defendants have argued that the amendment would be futile, and the Court agrees. Punitive damages are not available for a violation of the FDCPA. *E.g.*, *Mendes v. JH Portfolio Debt Equities*, No. 4:19-CV-1501 CDP, 2019 WL

4860660, at *2–3 (E.D. Mo. Oct. 2, 2019) (noting that § 1692k does not provide for punitive damages); *Keeton v. Countrywide Home Loans, Inc.*, 217 F. Supp. 3d 177, 181 (D.D.C. 2016) ("The FDCPA provides that private parties are limited to actions for any actual damages sustained by such person as a result of a debt collector's failure to comply with the Act, such additional damages as the court may allow, but not exceeding $1,000, and costs and reasonable attorney fees.") (cleaned up); *Desmond v. Phillips & Cohen Assocs., Ltd.*, 724 F. Supp. 2d 562, 563 n.1 (W.D. Pa. 2010) ("Punitive damages are not available under the FDCPA.").  Consequently, Coleman's motion is denied in this respect.

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Kassia Coleman's Motion for Leave to Amend Complaint and for Punitive Damages [Doc. No. 38] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff must file an amended complaint that comports with this Order on or before **Friday, April 24, 2020**.

Dated:  April 21, 2020                             s/ *Hildy Bowbeer*
                                                   HILDY BOWBEER
                                                   United States Magistrate Judge